IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EMILY GRZYB, | ) | |
|     Appellant | ) | |
| v. | ) | No. 3:05-cv-241 |
| MICHELLE WILSON, | ) | |
|     Appellee | ) | |

**<u>MEMORANDUM OPINION</u>**

This is an appeal pursuant to 28 U.S.C. § 158(a)(1) and (a)(2) and Bankruptcy Rule 8001, *et seq.*, appealing the order of the Bankruptcy Court denying the discharge of the appellant pursuant to the provisions of 11 U.S.C. § 727(a)(3) and (a)(4)(A). For the reasons that follow, the order of the Bankruptcy Court is affirmed.

I.

*Factual Background*

Prior to the death of appellee Michelle Wilson's husband on July 3, 2000, appellant Emily Grzyb was appellee's mother-in-law. In August 2000, after the

death of Wilson's husband, Grzyb stated to Wilson that most of the life insurance money that would be coming should be deposited in a bank account and that it would be a good idea for Grzyb to be listed on the account "just in case of an emergency" for Wilson's benefit.  Wilson agreed, and on September 14, 2000, Wilson opened a joint share draft account at ORNL Federal Credit Union and placed $86,554 of her money in that account.

At the request of Grzyb, during October 2000, Wilson agreed to pledge the ORNL account as collateral to ORNL to secure a $13,608.07 loan for Grzyb.  At the request of Grzyb, in December 2000, Wilson agreed to once again pledge the ORNL account as collateral for Grzyb to obtain a $25,000 debt consolidation loan.  Grzyb obtained all the benefit from these loans and was to repay the loans.

In early 2001, Wilson moved to Colorado to take a new job.  At about the same time Wilson and Grzyb had a falling out.  In April or May 2001, Grzyb withdrew for herself $3,399.71 of Wilson's money from the ORNL account.  When Wilson discovered the unauthorized withdrawal, she took the necessary steps to prohibit Grzyb's further access to the money, although the money remained pledged to Grzyb for the two ORNL loans.

Grzyb retaliated and stopped making the payments on both loans, knowing that by not making the payments, ORNL would seize Wilson's money which it did in September 2001. Plaintiff's resulting loss was $34,383.98 plus a July 2001 payment of $743.20 paid by Wilson. Wilson brought a civil action against Grzyb in Knox County Circuit Court and the jury found in Wilson's favor and awarded judgment in favor of Wilson in the amount of $38,526.89 plus pre-judgment interest of $1,846.07.

Wilson contends that the above facts constitute an intentional injury to Wilson's property and Wilson objected to the dischargeability of her debt pursuant to 11 U.S.C. § 523. Wilson also claimed that in her bankruptcy Grzyb grossly under-reported her true income history in her bankruptcy schedules and failed to provide adequate records explaining her income. Therefore, Wilson also objected to Grzyb receiving a discharge pursuant to 11 U.S.C. § 727.

This matter was tried before Judge Stair on February 14, 2005. Judge Stair found sufficient grounds to deny Grzyb her discharge pursuant to § 727, but made no ruling with respect to the § 523 claim.

The bankruptcy record shows that Grzyb transacted business as a corporation, Concord Realty, Inc. This was a service business performing the

service of real estate appraisals. While the stock was placed in the name of Grzyb's minor child, Grzyb was the president and wrote most all of the checks. She also signed the corporate tax return. Grzyb then wrote corporate checks to pay her personal expenses. Because of this, there was an extraordinary amount of "cost-of-goods sold" for the corporate tax return of Concord Realty. The "cost-of-goods sold" for the years 2001 to 2003 were $20,174.00, $20,181.00, and $59,207.00 respectively. Those were significant costs for goods for a corporation that does not sell goods.

Further support that Grzyb's true income was much higher than disclosed to the Bankruptcy Court is evidenced by signed applications for financing on January 23, 2003, and in the fall of 2003, where she alleges her gross income to be $7,600 monthly and $44,380 annually.

When faced with the claim that she overstated her corporate expenses and did not report her true personal income, Grzyb stated that she did not know what these expenses were for. However, the Bankruptcy Court found, "It is incredulous that the Debtor would blindly write out and sign checks without knowing their purpose and without keeping track of books." Furthermore, the Bankruptcy Court found that:

> Despite her attempts to seem unsophisticated, the Court is satisfied that the Debtor possesses sufficient business savvy to know more than she implied. Additionally, it is the Debtor's responsibility to produce documentation that will allow her creditors to fully ascertain her financial circumstances. It appears that the Debtor has chosen to provide documentation and make disclosures as she sees fit, providing an incomplete picture of her true financial condition. Her self-serving statement that she knew nothing and that anyone seeking information would have to ask her accountant or her former husband would not satisfy the requirements that she maintain books and records commensurate with that of another in similar circumstances. Her testimony at trial, such as her failure to give a straight answer regarding whether Mr. Grzyb worked part-time or full-time, only confirmed her unwillingness to be forthcoming with respect to her financial situation.

Trial Memorandum, p.24.

## II.

### *Analysis*

Rule 8013, Bankruptcy Rules of Civil Procedure, sets forth the standard of review of factual findings on appeal as follows:

> . . .
>
> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witness.

5

The following can be considered by the Bankruptcy Court in denying a discharge:

> The Debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, in which the Debtor's financial condition or business transactions might be ascertained unless such act or failure to act was justified under all the circumstances of the case; ...

11 U.S.C. § 727(a)(3).

Further, a discharge may be denied upon proof that:

> (4)   the Debtor knowingly and fraudulently, or in connection with the case -
>
>    (A)  made a false oath or account;
>
>          . . .

11 U.S.C. § 727(a)(4)(A).

Upon a *de novo* review of the record the court finds that the findings of the Bankruptcy Court that Grzyb's discharge should be disallowed because she failed to produce business records under 11 U.S.C. § 727(a)(3) and made false oath under 11 U.S.C. § 727(a)(4)(A) are not clearly erroneous.  She clearly failed to provide the business records necessary to ascertain her financial condition.

Moreover, the loan applications provide strong evidence that Grzyb misstated her past income on her bankruptcy schedules.

### III.

### *Conclusion*

In light of the foregoing, the order of the Bankruptcy Court denying appellant's discharge is hereby AFFIRMED.

Order accordingly.

                                                 *s/ James H. Jarvis*
                                     UNITED STATES DISTRICT JUDGE